**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| JENNIFER T. HENSON | § | |
| and STEVEN E. HENSON, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-CV-141 |
| | § | |
| DEEPWELL ENERGY SERVICES, LLC | § | |
| and JOSEPH A. GOODFRIEND, | § | |
| *Defendants*. | § | |

**MEMORDANDUM ORDER ON PLAINTIFFS' MOTIONS TO
STRIKE DEFENDANTS' EXPERT TESTIMONY**

Pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and the Local Rules for the United States District Court for the Eastern District of Texas, United States District Judge Michael J. Truncale referred several motions in this case to the undersigned United States Magistrate Judge for entry of findings and recommendation on case-dispositive motions and determination of non- dispositive matters.  (*See* Order Doc. No. 35).  Pending before the Court are *Plaintiffs' Motion to Strike Marc Chapman's Controverting Affidavits and Motion to Exclude Marc Chapman's Testimony*, (Doc. No. 17), and *Plaintiffs' Motion to Strike and/or Daubert Challenge to Expert Testimony of William Scott, PH.D*, (Doc. No. 18).  After review, the Court finds that *Plaintiffs' Motion to Strike Marc Chapman's Controverting Affidavits and Motion to Exclude Marc Chapman's Testimony*, (Doc. No. 17), should be granted and *Plaintiffs' Motion to Strike and/or Daubert Challenge to Expert Testimony of William Scott, PH.D*, (Doc. No. 18), should be granted in part and denied in part.

## I.    Procedural History

Plaintiffs Jennifer Henson and Steven Henson filed suit seeking damages arising from a motor-vehicle collision.   Plaintiffs allege that on June 13, 2019, Plaintiff Jennifer Henson was injured in a three-car collision caused by Defendant Joseph Goodfriend.   (Doc. No. 3 at 3). According to Plaintiffs, three vehicles were traveling on a highway—Plaintiff Jennifer Henson was first, followed by Glenda Perry driving behind Plaintiff Jennifer Henson, followed by Defendant Joseph Goodfriend driving behind Glenda Perry. (*Id.*).  As the trio traveled down the highway, Plaintiff Jennifer Henson and Glenda Perry slowed for traffic ahead; however, Defendant Joseph Goodfriend failed to slow down and control his speed. (*Id.*). As a result, Defendant Joseph Goodfriend caused a chain-collision and rear-ended Glenda Perry's vehicle, which caused her vehicle to rear-end Plaintiff Jennifer Henson's vehicle.  (*Id.*).  Plaintiffs claim that Defendant Joseph Goodfriend was operating his vehicle within the course and scope of his employment with Deepwell Energy Services, LLC ("Deepwell"). (*Id.* at 4).  Plaintiffs assert that Plaintiff Jennifer Henson sustained severe and disabling injuries and damages, and they seek damages and relief as a result of the collision. (*See id.* at 8).

On May 29, 2020, Defendants filed their notice of filing controverting affidavits from consultant Marc Chapman regarding Plaintiff Jennifer Henson's medical bills. (Doc. No. 10).  On November 24, 2020, Defendants filed their designation of testifying experts, which includes in relevant part, William R. "Mike" Scott, Ph.D., and Marc Chapman.  (Doc. No. 18-1).  Plaintiffs now seek to exclude or limit the testimony of Defendant's designated expert witnesses. (Doc. Nos. 17, 18).

## II.    Legal Standard

The admissibility of expert evidence is a procedural issue governed by Federal Rule of

Evidence 702 and *Daubert. See Wells v. SmithKline Beechum Corp.*, No. A-06-CA-126-LY, 2009 U.S. Dist. LEXIS 21251, at *22, 2009 WL 564303, at *7 (W.D. Tex. Feb. 18, 2009), *aff'd*, 601 F.3d 375 (5th Cir. 2010) (citing *Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 821 (W.D. Tex. 2005)); *see also generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Federal Rule of Evidence 702 sets forth the requirements that must be satisfied to enable a witness designated as an expert to testify to his or her opinions. An expert may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. *See* FED. R. EVID. 702. In *Daubert*, the Supreme Court directed district courts to use Rule 702 to function as gatekeepers when evaluating the admissibility of scientific evidence and determining whether expert testimony should be presented to the jury. *See Daubert*, 509 U.S. at 591-93. The proponent of the expert testimony "must prove by a preponderance of the evidence that the testimony is reliable." *Pittman v. Gen. Nutrition Corp.*, No. CIV.A.H-04-3174, 2007 U.S. Dist. LEXIS 22389, at *9, 2007 WL 951638, at *3 (S.D. Tex. Mar. 28, 2007) (citing *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Federal Rule of Evidence] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000), *cert. denied*, 531 U.S. 812 (2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999)).

The Supreme Court extended this gatekeeping function from the admissibility of scientific evidence to include the admissibility of all expert testimony. *See Kumho Tire*, 526 U.S. at 151-52.

In *Kumho Tire*, the Supreme Court outlined the factors for admitting expert testimony as the following: (1) the expert is qualified; (2) the evidence is relevant to an issue in the case; and (3) the testimony is reliable. *Kumho Tire*, 526 U.S. at 153-54; *see also Daubert*, 509 U.S. at 589, 590-91 (concluding that to be admissible, expert testimony must be relevant and reliable).

In deciding whether to admit or exclude expert testimony, the Supreme Court has offered a non-exclusive list of factors for courts to use in evaluating the validity or reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). These factors are not necessarily limited to scientific evidence and may be applicable to testimony offered by non-scientific experts, depending on the circumstances of the case. *Kumho Tire*, 526 U.S. at 150. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Metzler v. XPO Logistics, Inc.*, No. 4:13-CV-278, 2014 U.S. Dist. LEXIS 172972, at *4, 2014 WL 7146108, at *1-*2 (E.D. Tex. Dec. 15, 2014) (quoting *Daubert*, 509 U.S. at 594); *see also Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997) (*Daubert* analysis for both scientific and nonscientific experts focuses on the reasoning or methodology, not the ultimate conclusion). The *Daubert* factors are not "a definitive checklist or test," and the *Daubert* framework is a "flexible one." *Dearmond v. Wal-Mart Louisiana LLC*, 335 F. App'x 442, 445 (5th Cir. 2009) (per curiam).

The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire*, 526 U.S. at 150-51. Often, courts review the expert reports

before ordering exclusion of expert testimony for lack of reliability, relevance, or qualification. *See, e.g.*, *Sparling v. Doyle*, No. EP-13-CV-323-DCG, 2015 U.S. Dist. LEXIS 97204, at *9, 2015 WL 4528759, at *26 (W.D. Tex. July 27, 2015); *Charles v. Sanchez*, 2015 U.S. Dist. LEXIS 22752, at *13, 2015 WL 808417, at *10 (W.D. Tex. Feb. 24, 2015); *Little v. Technical Specialty Products, LLC*, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013).

The Supreme Court has not set forth a specific degree of reliability required or the manner in which the district courts must determine reliability of expert testimony.  *See Kumho*, 526 U.S. at 152.  The Court has "considerable leeway deciding in a particular case how to go about determining whether particular expert testimony is reliable . . . and the same kind of latitude in deciding how to test an expert's reliability."  *Id.*  Not every guidepost outlined in *Daubert* will necessarily apply.  *See Watkins*, 121 F.3d at 988-89.  Accordingly, "the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court."  *Metzler*, 2014 U.S. Dist. LEXIS 172972, at *4, 2014 WL 7146108, at *2 (citing *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir.2000)).  A trial court, therefore, has wide latitude in deciding whether to exclude an expert's testimony.  *See Kumho Tire*, 526 U.S. at 152.  Moreover, the rejection of expert testimony is the exception rather than the rule.  *Eagle Oil & Gas Co., v. Travelers Prop. Cas. Co. of Am.*, No. 7:12-CV- 00133-O, 2014 U.S. Dist. LEXIS 103537, at *10, 2014 WL 3744976, at *3 (N.D. Tex. July 30, 2014) (quoting FED. R. EVID. 702, Advisory Committee's Notes (2000)).  The trial court's gatekeeper role is not intended to serve as a replacement for the adversary system.  *Id.*

III.   **Plaintiffs' Motion to Strike Marc Chapman's Testimony (Doc. No. 17)**

A.   **Expert qualifications, reliability, and relevancy of Marc Chapman's testimony**

i.   **Marc Chapman is qualified as an expert.**

Plaintiffs argue that Mr. Chapman is unqualified to testify about the necessity of Plaintiff Jennifer Henson's medical treatment because he does not have any relevant medical training or experience. (Doc. No. 17 at 8).  In response, Defendants contend that Mr. Chapman is qualified because he has experience in medical services billing. (Doc. No. 19 at 7 (citing *Perez v. Boecken*, No. SA-19-CV-00375-XR, 2020 U.S. Dist. LEXIS 101836, at *32, 2020 WL 3074420, at *11 (W.D. Tex. June 10, 2020)).  The Court agrees with Defendants that Mr. Chapman is qualified to testify on the reasonableness of Plaintiff Jennifer Henson's medical charges.

Defendants' *Notice of Filing of Controverting Affidavits*, (Doc. No. 10), details Mr. Chapman's experience in the field of medical billing analysis.  (*See id.* at 6-8).  Mr. Chapman's experience is long and extensive.  Mr. Chapman has over 37 years of experience in health care billing review, coding, and auditing fields.  (*Id.*).  Mr. Chapman has an undergraduate degree in Business Administration/Accounting and completed a compliance education program.  (*Id.*).  Mr. Chapman is the founder and owner of Chapman Consulting.  (*Id.* at 4).  Since 2003, Mr. Chapman has conducted hospital bill reviews at Chapman Consulting.  (*Id.*).

Mr. Chapman compiled a database of financial data for every hospital in the country.  (*Id.*).  He utilizes a software program to determine fair and reasonable hospital bill pricing methodology.  (*Id.*).  As a result, Mr. Chapman regularly reviews, evaluates, and opines on the reasonableness of hospital charges and consults with individuals, attorneys, third-party administrators, insurance companies, and hospitals regarding hospital pricing and billing.  (*Id.*).

In summary, Defendants state, "Mr. Chapman analyzed and compiled over 19 years of

historical data, then compared his data for the relevant areas and procedures performed (by use of universally utilized CPT Codes) to what amount providers in the same area were charging for the said procedure.  Using this baseline, he then calculated (based on governmental data) what a reasonable charge for the service would be."  (Doc. No. 19 at 2).  The Court finds that Mr. Chapman has the experience necessary to opine on the reasonableness of Plaintiff Jennifer Henson's medical bills.

Plaintiffs argues that Mr. Chapman is unqualified because "[t]here is no evidence that [Mr.] Chapman has ever worked for any healthcare facility in Harris or Fort Bend County." (Doc. No. 17 at 9).  They also contend that there is no evidence which indicates that he is familiar with or negotiated what reasonable and customary healthcare charges anywhere in Texas for any relevant time period.  (*Id.*).  Plaintiffs cite no authority that would disqualify Mr. Chapman to testify as an expert merely because he lacks physical geographic experience.  Mr. Chapman's methodology accounts for differences in geography when determining the reasonableness of medical charges within a certain area.  (*See* Doc. No. 10 at 10).  Moreover, Mr. Chapman has been located in Texas for the majority of his career.  (*Id.* at 6).

Plaintiffs also argue that Mr. Chapman is unqualified to testify because he has no experience regarding "orthopedics, physical therapy, pain management, radiology, or outpatient surgical care, which was received by Mrs. Henson."  (Doc. No. 24 at 3).  Plaintiffs are correct that Mr. Chapman is unqualified to opine on the necessity or reasonableness of the medical treatment that Plaintiff Jennifer Henson received.  (Doc. No. 17 at 8).  However, based on the contents and scope of Mr. Chapman's controverting affidavits, (Doc. No. 10), Mr. Chapman does not seek to opine on such matters outside his expertise of medical billing charges.  "An expert witness testifying on the reasonableness of medical charges need not be a medical provider and can rely

7

on data from a database to support their opinion." *Carreon v. Gamez*, No. 5:19-CV-124, 2021 U.S. Dist. LEXIS 75116, at *17 (S.D. Tex. Mar. 24, 2021) (collecting cases).  Based on Mr. Chapman's experience in medical billing, the Court finds that he is qualified to testify on the reasonableness of the cost of Plaintiff Jennifer Henson's medical services.

### ii.  Marc Chapman's opinions are reliable.

Plaintiffs argue that Mr. Chapman's opinions are unreliable for various reasons.  Plaintiffs allege that Mr. Chapman's "opinions are not reliable and the data he relies on has nothing to do with the usual and customary charges for the same or similar services in the Jefferson and Harris County areas." (Doc. No. 17 at 4).  They contend that Mr. Chapman fails to consider any differences in providers types, services rendered, specialization of providers, or geographic area of services rendered.  (*Id.* at 10).  Plaintiffs argue that Mr. Chapman uses an undisclosed database of charges and an unexplained methodology.  (*Id.* at 6).  In turn, Defendants aver that Mr. Chapman's methodology and underlying data are reliable.  (Doc. No. 19 at 9).  Defendants argue that Mr. Chapman outlined his database and methodology, detailing the 134 percent comparison of private payor to Medicare rates for the prices of services rendered.  (*Id.*).

Mr. Chapman's testimony is reliable under Federal Rule of Evidence 702 and *Daubert*. Mr. Chapman details his methodology, which requires him to evaluate Plaintiff's medical billing records and compare them to nationwide CPT codes, apply his expertise to determine whether medical documentation supports those charges, and evaluate the manner of billing by those providers.  (Doc. No. 19 at 10-11).  Mr. Chapman's CPT code comparison does not render his methodology unreliable.  *See Perez v. Boecken*, No. SA-19-CV-00375-XR, 2020 Dist. LEXIS 101836, at *12, 2020 WL 3074420, at *5 (W.D. Tex. June 10, 2020); *see also Koenig v. Beekmans*, No. 5:15-CV-0822-OLG, 2017 U.S. Dist. LEXIS 227574, at *7, 2017 WL 7732809, at *3 (W.D.

Tex. Mar. 23, 2017) (rejecting defendants' argument that plaintiff's expert's use of a database to determine future medical expenses was unreliable or constituted an improper methodology). Plaintiff's attack on Mr. Chapman's opinion goes to the "bases and sources of an expert's opinion" and "affect[s] the weight of the evidence rather than its admissibility." *Id.* at *9. Such a dispute "should be left for the finder of fact." *Id.* at *10.

### iii. Marc Chapman's opinions are not relevant.

Plaintiffs argue that Mr. Chapman's opinions are irrelevant because he bases his calculations on "what reasonable charges would be in . . . on what Medicare would pay and what the reimbursement rates would be for undisclosed private payors." (Doc. No. 17 at 7). Plaintiffs contend that determining reasonable and necessary expenses is a decision reserved for the jury. (*Id.*). They maintain that because Plaintiff Jennifer Henson did not use Medicare, nor is she eligible, Medicare is an irrelevant measure for calculating reasonable charges. (*Id.*).

Defendants respond that Mr. Chapman's opinions are relevant. (Doc. No. 19 at 11). Defendants argue that the Texas Supreme Court has explicitly held that reasonable rates can be determined from insurance agreements. (*Id.* (collecting cases)). Defendant also aver that Medicare rates are relevant to determine the reasonableness of a charge because insurance rates and Medicare reimbursement rates affect the amount that hospitals charge for services. (*Id.* at 12 (citing *In re North Cypress Medical Center Operating Company, Ltd.*, 559 S.W.3d 128, 133 (Tex. 2018))).

Mr. Chapman's opinions are irrelevant in determining the reasonableness of charges based on the methodology that he proffers. An expert's opinion is relevant if it has a "tendency to make a fact more or less probable than it would be without the evidence," and will "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 401; *Daubert*, 509

U.S. at 591.   Section 41.0105 of the Texas Civil Practices and Remedies Code provides that recovery of medical or health care expenses in a personal injury suit is limited to the amount actually paid or incurred by or on behalf of the claimant. TEX. CIV. PRAC. & REM. CODE § 41.0105. In *Haygood v. De Escabedo*, 356 S.W.3d 390, 398 (Tex. 2011), the Texas Supreme Court stated that Section 41.0105 limits a plaintiff's recovery of medical expenses to actual costs paid and not the "list price" posted on a medical provider's bills.   In other words, only evidence of expenses actually paid or incurred by the claimant can be presented to a jury.

In *Guzman v. Jones*, the United States Court of Appeals for the Fifth Circuit held that evidence of what an uninsured individual could have been charged for medical services under different circumstances is irrelevant under Texas law.   804 F.3d 707, 712-13 (5th Cir. 2015).   The Fifth Circuit stated:

> Appellants argue here that Guzman's debt to his medical providers is not "actually incurred" because Guzman may have been charged a different rate had he participated in an insurance program.   That argument is unconvincing; here, Guzman has actually incurred his billed obligations because he received the medical care, was billed for it, has provided no payments to cover it, and could be subject to suit for non-payment in the full amount billed.   The amount he might have owed under different circumstances has no bearing on what Guzman actually owes now.

*Id.*

> Mr. Chapman details the baseline assumptions for his calculations as follows:

> It was stated in the above reports what the ratio was of Medicare's payments to physicians and other health professional services to what private payers have contracted for payment to those providers.   The claims data was averaged across all services and areas.   This comparison of Medicare and private payment rates is based on an analysis of paid claims for two large national private insurers.   The private payer payment rates on average have ranged from 122% to 134% of Medicare's payments.   I believe this information allows us to review and analyze the list prices of physicians and other health professional services.   Using Medicare's payment rates as a benchmark we are able to calculate what the contracted payments rates for private payers would be for medical services.   The amount that private payers are willing to pay and providers are willing to accept would be the market rate or

the reasonable market value for that medical service.

(Doc. No. 17-1 at 63).

Here, Mr. Chapman ratios Medicare reimbursement rates for medical services charged and private payment rates based on paid claims for two large national private insurers. (*Id.*). Mr. Chapman then utilizes this ratio to determine the reasonable cost of Plaintiff Jennifer Henson's medical expenses. (*Id.*). However, Texas law clearly indicates that a plaintiff's recovery of medical expenses is limited to her actual costs paid. *See Haygood*, 356 S.W.3d at 398. Defendants and Mr. Chapman fail to show how Medicare reimbursement rates and undisclosed private payors, are relevant to the actual costs that Plaintiff Jennifer Henson paid. The Court is inclined to agree with Plaintiffs' characterization of Mr. Chapman's methodology in accordance with Texas law:

> Mrs. Henson did not use Medicare and is not eligible for it. As such, what Medicare would pay is irrelevant. Additionally, the reimbursement rates paid by other undisclosed private payors to undisclosed providers for other undisclosed patients is not relevant to this Plaintiff or her providers. What others have paid or what others would have paid is simply not the standard used under [TEX. CIV. PRAC. REM. CODE] § [41.0105] or under Texas case law. As a result, the opinions by Mr. Chapman are not relevant and should be excluded.

(Doc. No. 17 at 7-8).

Defendants are correct to the extent that insurance and Medicare reimbursement rates affect the amount that hospitals charge for services. (*See* Doc. No. 19 at 12). Generally speaking, health care costs are affected by a multitude of factors: geography, experience, location, government payment methods, and the desire to make a profit. *See Gunn v. McCoy*, 554 S.W.3d 645, 673 (Tex. 2018) ("While hospital prices ideally should be determined by the cost of providing care, in reality[,] list prices are driven[,] in large part[,] by the reimbursement rates for federal programs such as Medicare and Medicaid, and by negotiations with private insurers."). Yet, the standard that Defendants propose is not the standard that applies to this case. Mr. Chapman and Defendants'

standard is inapplicable because Mr. Chapman generally calculates what a reasonable medical expense would be based on multiple factors that contribute to medical care prices. Instead, the relevancy of reasonable medical expenses depends on the medical expenses that Plaintiff Jennifer Henson actually incurred. *See Haygood*, 356 S.W.3d at 398 (concluding that Section 41.0105 limits a plaintiff's recovery of medical expenses to actual costs paid). Based on the foregoing, the Court there finds that Mr. Chapman's testimony should be excluded as irrelevant and inadmissible. *See* FED. R. EVID. 401, 702.

### iv. Marc Chapman's testimony stricken by other Texas state court orders is unpersuasive.

Plaintiffs cite several Texas state court orders in which other courts had stricken Mr. Chapman as a testifying expert. (Doc. Nos. 17 at 12; 17-3 at 2-11). As a result, Plaintiffs maintain that Mr. Chapman should be similarly stricken as a testifying expert based on past state court decisions. In response, Defendants cite Texas state court orders that denied various plaintiffs' motions to strike Mr. Chapman's opinions, and they were accordingly upheld. (Doc. Nos. 19 at 13-14; 19-1 at 1-6). The parties' cited state court orders are certainly indicative of Mr. Chapman's extensive history as an expert, but they are by no means binding on this Court. The cases that the parties cite are conclusory and do not expound as to why Mr. Chapman's opinions were stricken or upheld. Plaintiffs cite to one court order that had stricken Mr. Chapman's testimony because "[Mr.] Chapman has not established that he is qualified to render testimony as to the reasonableness or unreasonableness of medical charges in Harris and Ft. Bend County, Texas." (Doc. No. 17 at 12 (citing *Salinas v. Medina*, No. 2015-549010, 2016 WL 11609928 (133rd Tex. Dist., Harris, Aug. 16, 2016))). Although the cited case states why Mr. Chapman's testimony was stricken, no additional information nor analysis is apparent to aid this Court's understanding of the court order. Furthermore, this Court is not bound by unpublished state district court orders.

In *Carreon v. Gamez*, the court considered whether a testifying expert witness was qualified to testify.  No. 5:19-CV-124, 2021 U.S. Dist. LEXIS 75116, at *19, 2021 WL 1428485, at *3 (S.D. Tex. Mar. 24, 2021).  To aid its decision, the *Carreon* Court considered the persuasive weight of prior state court orders, which had stricken a testifying expert witness.  *Id.*  The court was "persuaded by other courts' analysis of [the testifying expert's] qualifications and methodology," and found that the defendant failed to both address the state court orders and cite any cases that found the testifying expert to be qualified.  *Id.*  However, while not binding on this court, *Carreon* is inapplicable because Defendants attempt to address the state court decisions in which Mr. Chapman's opinions were stricken and also cite cases in which his testimony was upheld.  (Doc. No. 19-1 at 1-6).

Based on the information available, the Court finds that other cases in which Mr. Chapman's testimony was or was not stricken are not determinative of whether Mr. Chapman's testimony should be stricken in this case.

### B.  Section 18.001

Plaintiffs argue that Mr. Chapman's counter-affidavits fail to satisfy the requirements of Section 18.001(f) of the Texas Civil Practice and Remedies Code.  Specifically, Plaintiffs raise three arguments:  They allege that (1) Mr. Chapman's reports are unsworn; (2) Mr. Chapman is unqualified, and (3) his counter-affidavits are conclusory, and accordingly, fail to provide reasonable notice on the bases that Plaintiffs' medical expenses are controverted.  (Doc. No. 17 at 3).  Defendants, in turn, refute Plaintiffs' arguments on all points.  Defendants contend that (1) Mr. Chapman's reports are properly sworn; (2) Mr. Chapman is qualified; and (3) his counter-affidavits provide reasonable notice on the basis that they challenge the reasonableness of Plaintiffs' medical expenses.  (Doc. No. 19 at 3-6).

Before the Court addresses the substance of Mr. Chapman's compliance with the requirements of Section 18.001, Defendants, in passing, argue that Section 18.001 is inapplicable in federal court.  (*Id.* at 1).  In a footnote, they state that Section 18.001 does not apply in federal court because it is purely procedural and conflicts with the Federal Rules of Evidence.  (*Id.*).  They reassure the Court that Defendants intend to challenge its applicability; however, the Court sees no such challenge in the record.  (*Id.*).  For purposes of Plaintiffs' *Motion to Strike*, (Doc. No. 17), the Court concludes that Defendants have waived their arguments concerning the applicability of Section 18.001 in federal court.  To the extent that Defendants stand by their unsupported arguments, this Court finds that Section 18.001 applies in federal court and relies on prior precedent within the Eastern District that have held the same.  *See Vansill v. Dollar Tree Stores, Inc.*, No. 4:19-CV-612-SDJ-KPJ, 2021 U.S. Dist. LEXIS 29975, at *12-*13, 2021 WL 860457, at *5 (E.D. Tex. Feb. 18, 2021) (Priest Johnson, Mag. J.); *see also Peals v. QuikTrip Corp.*, No. 4:20-CV-22-KPJ, 2021 U.S. Dist. LEXIS 7140, at *23-*24, 2021 WL 302547, at *10 (E.D. Tex. Jan. 6, 2021) (Priest Johnson, Mag. J.); *see also Bagley v. Dollar Tree Stores, Inc.*, No. 1:18-CV-580, 2019 U.S. Dist. LEXIS 207531, at *18, 2019 WL 6492585, at *7 (E.D. Tex. Dec. 2, 2019) (Crone, J.).

Under Texas law, plaintiffs may introduce affidavits, if uncontroverted, as evidence of their damages, such as medical bills.  In response, defendants may provide counter-affidavits to controvert plaintiffs' affidavits challenging either the reasonableness or necessity of plaintiffs' medical bills.  The requirements of the parties' affidavits are as follows:

> (b) Unless a controverting affidavit is served . . . an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary . . . .

> (f) The counteraffidavit must give reasonable notice of the basis on which the party serving it intends at trial to controvert the claim reflected by the initial affidavit and must be taken before a person authorized to administer oaths. The counteraffidavit must be made by a person who is qualified, by knowledge, skill, experience, training, education, or other expertise, to testify in contravention of all or part of any of the matters contained in the initial affidavit . . . .

TEX. CIV. PRAC. & REM. CODE § 18.001(b), (f).  Plaintiffs' affidavits need only be provided by "the person who provided the service or the person in charge of records showing the service provided and charge made." *Id.* at § 18.001(c)(2)(A)-(B).  Defendants' counter-affidavits must be prepared by an expert—"a person who is qualified, by knowledge, skill, experience, training, education, or other expertise . . ." *Id.* at § 18.001(f).

First, Plaintiffs allege that Mr. Chapman's reports are unsworn; however, the Court disagrees.  (Doc. No. 17 at 3).  In his counter-affidavits, Mr. Chapman stated:

> Attached as Exhibit A to this affidavit, and fully incorporated herein by reference, is my report that outlines my methodology and more fully outlines my opinions in this case.  I have read this affidavit and the statements and opinions contained therein, including Exhibit A, and the statements and opinions are true and correct based upon my personal knowledge, analysis, training, and education.

(Doc. No. 17 at 57, 66, 76, 86).  The reports were properly sworn because they were incorporated into his sworn affidavit.  *See Parker v. Robert Ryan Realtors, Inc.*, No. 14-10-00325-CV, 2010 Tex. App. LEXIS 8549, at *6-*7, 2010 WL 4226550, at *3 (Tex. App.—Houston 2010, no pet.) (mem. op.) (concluding that the affidavits were properly sworn because they were incorporated in the sworn affidavit).

Second, Plaintiffs argue that Mr. Chapman is unqualified for purposes of his counter-affidavit.  (Doc. No. 17 at 3).  Under Federal Rule of Evidence 702, an individual is qualified to testify as an expert by knowledge, skill, experience, training, or education.  FED. R. EVID. 702.  Similarly, under Section 18.001(f), the counter-affidavit must be submitted by an expert.  TEX. CIV. PRAC. & REM. CODE § 18.001(f).  The Court already found that Mr. Chapman is qualified to

provide expert testimony pursuant to Federal Rule of Evidence 702.  The Court reiterates its analysis and findings herein and consequently finds that he is qualified under Section 18.001(f). *Reynolds v. United Fin. Cas. Co.*, No. 9:19-CV-154-ZJH, 2020 U.S. Dist. LEXIS 248845, at *4, 2020 WL 8269667, at *2 (E.D. Tex. Dec. 14, 2020) (relying on Federal Rule of Evidence 702 to interpret Section 18.001(f) of the Texas Civil Practices and Remedies Code).

Third, Plaintiffs contend that Mr. Chapman's reports did not provide reasonable notice for the bases on which he contravenes Plaintiff Jennifer Henson's medical expenses.  (Doc. No. 17 at 3).  Counter-affidavits need only provide "the opposing party sufficient information to enable that party to prepare a defense or a response."  *In re Allstate Indemn. Co.*, No. 20-0071, 2021 WL 1822946, at *16 (Tex. May 7, 2021).   Here, Mr. Chapman's counter-affidavits satisfy the reasonable-notice requirement because he itemizes each charge that is being controverted as unreasonable.  *Id.* at *17.  He details his methodology, which requires him to evaluate Plaintiff Jennifer Henson's medical billing records and compare them to nationwide CPT codes; apply his expertise to determine whether medical documentation supports those charges; and evaluate the manner of billing by those providers.  (Doc. No. 19 at 10-11).  Also, Plaintiffs raise sufficient challenges to Mr. Chapman's counter-affidavits, which indicates that Plaintiffs had reasonable notice of the issues that his counter-affidavits raise.  (*See* Doc. No. 17).  Therefore, Mr. Chapman's counter-affidavits satisfy the reasonable-notice requirement of Section 18.001(f).  Accordingly, the Court finds that Mr. Chapman's counter-affidavits are admissible under Section 18.001(f) for the purposes of contravening the reasonableness of Plaintiff Jennifer Henson's medical expenses.

The Court reiterates, however, that to the extent that Mr. Chapman is offered as an expert under Federal Rule of Evidence 702 and *Daubert*, his testimony should be excluded as irrelevant and inadmissible.  *See* FED. R. EVID. 401, 702.  Under Section 18.001(f), Mr. Chapman's counter-

affidavits contravene the reasonableness of the amount charged for Plaintiff Jennifer Henson's medical services.  As such, Plaintiffs' medical-billing affidavits are controverted and considered as insufficient evidence to the extent that they are offered under Section 18.001(b) to support a finding of fact that the amount charged for Plaintiffs' medical services was reasonable.

### C.  Federal Rule of Evidence 403

In their reply, Plaintiffs raise a new argument and contend that even if Mr. Chapman's testimony were admissible pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert*, it would be inadmissible under Federal Rule of Evidence 403.  (Doc. No. 24 at 3).  Because Mr. Chapman's testimony is irrelevant, and therefore inadmissible under Federal Rule of Evidence 702 and *Daubert*, the Court need not address Plaintiffs' arguments concerning Rule 403.

## IV.  Plaintiffs' Motion to Strike William Scott's Testimony (Doc. No. 18)

### A.  Qualifications of William Scott

#### i.  William Scott is qualified in the field of biomechanics.

Plaintiffs argue that Dr. Scott is unqualified in the field of biomechanics.  (Doc. No. 18 at 5).  Plaintiffs state that "Dr. Scott has no background in the field of biomechanics, as he has neither trained in a university setting, taught in the field of biomechanics, consulted with physicians regarding biomechanics, nor performed studies in the field of biomechanics."  (*Id.* at 6).  In response, Defendants contend that Dr. Scott has extensive education, training, and experience that qualifies him as an expert in the field of biomechanics.  (Doc. No. 20 at 4).

The Court finds that Dr. Scott is qualified to testify on the topic of biomechanics.  He has a Bachelor of Science, Master's Degree, and Ph.D. in engineering science with a concentration in mechanical engineering from the State University of New York at Buffalo.  (Doc. No. 20-1 at 2).  Dr. Scott wrote his Ph.D. dissertation in the field of biomechanics.  (*Id.*).  Dr. Scott studied

physiology during his graduate work and was awarded a post-doctoral fellowship in the Physiology Department (School of Medicine) by the National Institute of Health where he performed studies on gas transport and mixing in the lungs of test subjects.   (*Id.*).   Dr. Scott attended the Traffic Accident Reconstruction Course at the Northwestern Traffic Institute.   (*Id.*).

He has investigated over 3,000 traffic crashes and other injury producing events, and he has performed an injury causation analysis in each case.   He has over 31 years of experience in biomechanics, working at the Biodynamic Research Corporation.   (*Id.*).   Dr. Scott has co-authored multiple papers in the field of biomechanics.   (*Id.*).   He has also presented studies at the 2010 and 2012 Society of Automotive Engineers World Congress which assists investigators in determining the severity of crashes.   (*Id.*).

### ii.   William Scott is unqualified  to testify on medical causation.

Plaintiffs contend that Dr. Scott is held out to be an expert in the field of biomechanics; however, Plaintiffs allege that his expert analysis and report include a medical-causation conclusion. (Doc. No. 23 at 1).   Plaintiffs allege that Dr. Scott is unqualified to opine on Plaintiff Jennifer Henson's injuries because he "is not a medical doctor, nor has he been professionally educated or trained as a medical doctor."   (*Id.* at 2).   In particular, Plaintiffs quote parts of Dr. Scott's report that they contend exceed his qualifications:

> In the Plaintiffs' Original Petition there was a claim that Ms. Henson had a right shoulder injury as a result of this incident.  Dr. Scott is not [] sure what the injury is, as there is no medical literature that indicates that a low-speed rear-end collision could cause a rotator cuff tear and a number of biomechanical studies indicate that these types of collisions do not cause rotator cuff tears.

> Based on Dr. Scott's review of the information available to him and his analysis, he concluded that the forces and accelerations that Ms. Henson experienced in the subject crash were similar to those experienced in everyday activities and the risk of a permanent injury was very small.  Based on the scientific literature, she may have experienced some minor strain to her neck muscles in this incident.

(Doc. No. 18-1 at 5).

The Court agrees with Plaintiffs to the extent that Dr. Scott is unqualified to opine on Plaintiff Jennifer Henson's specific injuries.  With respect to Dr. Scott's opinions pertaining to Plaintiff Jennifer Henson's injuries, the Court finds the cases cited by the parties to be instructive. (*See* Doc. Nos. 23 at 2-4; 20 at 4-5).  The parties cite *Herrera v. Werner Enterprises, Inc.*, which found that biomechanical engineers are qualified 'to determine injury causation forces in general and can tell how a hypothetical person's body will respond to those forces but are not qualified to render medical opinions regarding the precise cause of a specific injury.  No. SA-14-CV-385-XR, 2015 U.S. Dist. LEXIS 182596, at *3, 2015 WL 12670443, at *1 (W.D. Tex. Sept. 28, 2015) (quoting *Laski v. Bellwood*, No. 99-1063, 2000 U.S. App. LEXIS 12068, at *3-*4, 2000 WL 712502, at *1 (6th Cir. May 25, 2000)).  Dr. Scott may certainly opine on all matters relating to biomechanics.  *See Herrera*, 2015 U.S. Dist. LEXIS 182596, at *9 (matters relating to biomechanics included "the forces in the accident, the damage to the vehicles, and the injury causation forces in the accident and their hypothetical effect on the human body).  However, Dr. Scott exceeds his expertise in opining about the possibility on a neck strain related to the accident. Dr. Scott essentially renders a medical opinion upon which he is unqualified.  *See, e.g.*, *Falgout v. Higbee Lancoms, LP*, No. 20-57 SECTION I, 2020 U.S. Dist. LEXIS 226886, at *8, 2020 WL 7074425, at *3 (E.D. La.  Dec. 3, 2020).  The Court concludes that Dr. Scott is unqualified to testify as to the medical causation of Plaintiff Jennifer Henson's injuries.

### B.  William Scott's testimony is reliable.

Plaintiffs assert that Dr. Scott's testimony is unreliable because "[h]e did not simulate the actual crash with another crash using the exemplar vehicles."  (Doc. No. 18 at 8).  He also alleges that the studies Dr. Scott performed were not peer reviewed by other engineers and are not

available for peer review.  (*Id.*).  Plaintiffs further contend that the studies upon which Dr. Scott relies are not comparable to the multi-car collision in this case based on the occupant position in the vehicle; the size, weight, and height of the occupant; the pre-existing condition of the occupant; the headrest position; and seat stiffness and set back; the angle of the impact; the severity of the impact; the post-impact maneuvers of the vehicle, and other injury-causing variables.  (*Id.*). Plaintiffs argue that Dr. Scott's report excludes any reference to him considering the depositions of the individuals involved in the crash—Plaintiff Jennifer Henson, Glenda Perry, and Defendant Joseph Goodfriend.  (*Id.*).

In response, Defendants argue that Dr. Scott's methodology is reliable because he used an Injury Causation Analysis (ICA)—"the examination of a collision event in order to understand its nature and to determine its essential features, including the causation of injuries"—which they contend has been accepted by various government agencies and courts.  (Doc. No. 20 at 6 (citing *Hernandez v. Swift Transp. Co., Inc.*, No. SA-09-CV-855-XR, 2010 WL 3211058, at *3 (W.D. Tex. Aug. 10, 2010) (citation omitted))).  Defendants also provide an overview of Dr. Scott's methodology—

> Dr. Scott determine the vehicle dynamics experienced by the Infiniti QX60 driven by Plaintiff and the Ford F150 in their impact after examining exemplar vehicles of the same make and model as the described vehicles as well as photographs taken of the actual vehicles involved in the incident giving rise to Plaintiff's lawsuit and the police report's description of the incident.

(Doc. No. 18-1 at 4).  Defendants also argue that Plaintiffs' disagreements pertaining to improperly accounted for variables, calculations, or underlying assumptions are more appropriately suited for "vigorous [cross-examination], not the Court's gatekeeper functions."  (Doc. No. 20 at 8).

In reply, Plaintiffs claim that Dr. Scott's opinions are unreliable because Dr. Scott's report does not fully address or describe the force of the impact from Defendant Joseph Goodfriend's

vehicle.  (Doc. No. 23 at 7).  Plaintiffs allege that Dr. Scott's report is "devoid of any exemplar photos, measurements, calculations[,] and/or delta changes in force relating to [Defendant Joseph Goodfriend's] vehicle, which was the source and origin of the crash . . ." (*Id.*).  Plaintiffs did not file a sur-reply.  The Court agrees with Defendants that Dr. Scott's report is reliable.

Plaintiffs assert that Dr. Scott failed to simulate the crash with another crash using the exemplar vehicles; relied upon studies that are not comparable; failed to consider the depositions of those involved in the crash; and failed to account for Defendant Joseph Goodfriend's vehicle in the analysis of the crash.  (Doc. Nos. 18 at 8; 23 at 7).  Although these arguments may call into question the relevancy and credibility of Dr. Scott's testimony, they fail to sufficiently undermine the reliability of the methodology used by Dr. Scott on these issues.  Plaintiffs' arguments attack the weight of Dr. Scott's methodology, and as such, any purported shortcomings that Plaintiffs perceive in Defendants' methodology may be explored on cross-examination.  *Pike v. Premier Transportation & Warehousing, Inc.*, No. 13-CV-8835, 2016 U.S. Dist. LEXIS 155280, 2016 WL 6599940, at *5 (N.D. Ill. Nov. 8, 2016); *see also Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Plaintiffs next assert that Dr. Scott's report was not peer-reviewed, (Doc. No. 18 at 8); however, the *Daubert* factor that focuses on peer review and publication does not concern whether the expert's proffered report is peer-reviewed, but, instead, whether "the *theory or technique* used by the expert has been subjected to peer review and publication." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted) (emphasis added); *see also Broussard v. State Farm Fire and Case. Co.*, 523 F.3d 618, 631 (5th Cir. 2008).  In Dr. Scott's report, he utilized the ICA method to analyze the crash.  (Doc. Nos. 18-1 at 13-26; 20-1 at 3).  An

ICA "is the examination of a collision event in order to understand its nature and to determine its essential features, including the causation of injuries." *Hernandez v. Swift Transp. Co., Inc.*, No. SA-09-CV-855-XR, 2010 U.S. Dist. LEXIS 82454, at *11, 2010 WL 3211058, at *3 (W.D. Tex. Aug. 10, 2010) (citation omitted). ICA has been subject to peer review and publication in multiple technical publications. (*See* Doc. No. 20 at 17-22). Courts have previously accepted the ICA as reliable. *See, e.g.*, *Taylor v. Royal Caribbean Cruises, Ltd.*, No. 18-CV-24093, 2019 U.S. Dist. LEXIS 230137, at *6, 2019 WL 8362117, at *3 (S.D. Fla. Oct. 24, 2019) (concluding that expert was allowed to opine that it was highly unlikely that a shoulder injury would occur in an iFly activity in the absence of additional force being asserted by application of ICA); *Rollins v. Calderon*, No. B:17-CV-244, 2019 U.S. Dist. LEXIS 166115, at *8, 2019 WL 4544459, at *3 (S.D. Tex. May 13, 2019) (holding that expert's use of ICA was partly sufficient to support testimony). The Court finds that Dr. Scott's methodology is sufficiently reliable under *Daubert*.

### C. William Scott's testimony stricken by other Texas state court orders is unpersuasive.

In their *Motion to Strike*, Plaintiffs cite to numerous cases where they purport that "Dr Scott's expert testimony and others from his firm, Biodynamic Research Corporation, have been stricken from other cases for being unreliable, failing to establish proper methodology or foundation[,] and/or were based on speculation." (Doc. No. 18 at 9-16). Plaintiffs cite to these cases as persuasive authority, which impinges on Dr. Scott's reliability in the present case. (*Id.* at 16). In response, Defendants address the merits of some of the cases that Plaintiffs cite, and Defendants cite to other cases where Dr. Scott has been permitted to testify as an expert. (Doc. No. 20 at 10-12). This Court has already addressed similar arguments as they pertain to the reliability of Mr. Chapman's testimony, and the Court, accordingly, mirrors this prior analysis. To reiterate, in terms concerning Dr. Scott's testimony, the Court finds that other cases in which Dr.

Scott's testimony was or was not stricken are not determinative of whether Dr. Scott's testimony should be stricken in this particular case.

**V.      Conclusion and Order of the Court**

For the reasons stated herein, the Court **ORDERS** that *Plaintiffs' Motion to Strike Marc Chapman's Controverting Affidavits and Motion to Exclude Marc Chapman's Testimony*, (Doc. No. 17), is **GRANTED**.  It is **ORDERED** that Mr. Chapman's report is stricken in its entirety, and he is prohibited from providing testimony as an expert witness.

The Court **FURTHER ORDERS** that Plaintiffs' medical-billing affidavits are controverted and considered as insufficient evidence to the extent that they are offered under TEX. CIV. PRAC. & REM. CODE § 18.001(b) to support a finding of fact that the amount charged for Plaintiffs' medical services was reasonable.

The Court **FURTHER ORDERS** that *Plaintiffs' Motion to Strike and/or Daubert Challenge to Expert Testimony of William Scott, PH.D.*, (Doc. No. 18), is **GRANTED IN PART AND DENIED IN PART**.  It is **ORDERED** that the portions of Dr. Scott's expert report relating to the specific cause of Plaintiff Jennifer Henson's injuries are stricken, but the remainder of his report is admissible.

**SIGNED this the 14th day of June, 2021.**


KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE